IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| HILLARY SCHNEIDER, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No.: |
| FITBIT, INC., | ) ) | JURY TRIAL DEMANDED |
| Defendant. | ) ) | |

## CLASS ACTION COMPLAINT

Plaintiff, Hillary Schneider, individually and on behalf of all others similarly situated, through his undersigned counsel, alleges for her Class Action Complaint against Defendant, Fitbit, Inc. ("Fitbit" or "Defendant"), based upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including the investigation conducted by her counsel as follows:

## NATURE OF THE ACTION

1. This is a class action arising out of Defendant's design, marketing and sale of Fitbit devices to Plaintiff and the class defined herein. More specifically, the Fitbit "Charge 2" smart fitness bands (the "Product") purchased by Plaintiff and other class members were manufactured with screens that develop cracks over time. The devices, introduced in 2016 with a retail price of $149.95 ($179.95 for the Special Edition Series), continue to be sold through major retailers throughout the United States. When customers such as Plaintiff have complained that their Charge 2 screens have cracked, Fitbit has refused to provide refunds or repairs; instead, consumers are offered a 25% discount on a replacement product.

2. Defendant engaged in unfair and/or deceptive business practices by misrepresenting the Product's quality and value to consumers.

3. As a result of the defect, Plaintiff and other class members have overpaid for the Product because the crack significantly diminishes the value of the Product. Additionally, Plaintiff and class members have purchased a Product that they would not otherwise have purchased, or would have paid less for, had they known of the defect. Plaintiffs and the class members have consequently suffered actual economic damages as a result of Fitbit's unlawful conduct.

4. Defendant's design, manufacture and sale of Fitbit Charge 2 smart fitness bands with screens that are prone to cracking gives rise the claims alleged herein for (1) violation of Section 2 of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2, (2) breach of implied warranty of merchantability, and (3) unjust enrichment alleged, in the alternative.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2), as this is a class action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which members of the class, which number in excess of 100, are citizens of states different from Defendant.

6. Personal jurisdiction over Defendants is proper under 735 ILCS 5/2-209(a)(1) (transaction of any business within this State), (b)(4) (corporation doing business within this State), and/or (c) (any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States). 735 ILCS 5/2-209(b)(1),(4), and (c).

7. Venue is proper in this district pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events giving rise to the claim occurred in this district.

## PARTIES

8. Plaintiff, Hillary Schneider, is a natural person domiciled in Bartlett, Illinois. Plaintiff is a member of the class of the class defined herein.

9. Defendant Fitbit, Inc., is a technology company incorporated under the laws of Delaware with its principal place of business in San Francisco, California. Fitbit designed, manufactured and sold the Charge 2 health and fitness trackers at issue herein.

## BACKGROUND

10. Fitbit is a technology company that sells wearable devices, including health and fitness trackers and smartwatches, which enable users to view data about their daily activity, exercise and sleep in real-time. Fitbit devices automatically track users' daily steps, calories burned, distance traveled, and active minutes, and display real-time feedback to users. Most Fitbit devices also measure floors climbed, and sleep duration and quality, and our more advanced products track heart rate, and GPS-based information such as speed, distance, and exercise routes. Some Fitbit devices also have the ability to receive call and text notifications.

11. Wearable biometric devices are quickly entering the mainstream. Wearables are meant to make lives easier, so many consumers invest in a fitness tracker that's functional, yet stylish.

12. Fitbit is a leader in the industry and holds itself out to the public as a manufacturer conscious of quality, technology, innovation and design.[1]

13. Since 2010, Fitbit has sold about 76 million devices worldwide, and has over 25 million active users. The company is amongst the leading companies in the wearable market.[2]

---

[1] *See* https://www.fitbit.com/eu/technology ("So when we say we're dedicated to creating smarter sensors, fashionable form factors, efficient electronics, intuitive interactions and engaging social features, it's because we're dedicated to you.") (last accessed Feb. 22, 2019).

[2] *See Fitbit Community Grows to More Than 25 Million Active Users in 2017,* Press Release, https://investor.fitbit.com/press/press-releases/press-release-details/2018/Fitbit-Community-Grows-to-More-Than-25-Million-Active-Users-in-2017/default.aspx (last accessed, Feb. 22, 2019)

14. Beginning in or about September 2016, Fitbit began selling its Charge 2 wearable device to the public. An image of the Charge 2 appears below:



Additional images and information about the device's features are available are contained in the following online video: https://youtu.be/PxpxRoWmjq8 (as last accessed Feb. 22, 2019). All of the data described in Paragraph 9, supra, is displayed on the device's 3.8-centimeter, organic light-emitting diode (OLED) tap display made of hardened plastic.

15. The above-described display, in addition to being the central means by which data is received and displayed, is also the device's primary aesthetic appeal much like the face of a wristwatch.

16. The Charge 2 was advertised as an improvement over the Charge HR, specifically for its larger screen display. In a blog post introducing the Charge 2, Fitbit boasted the following:

> The easy-to-read tap-sensitive display is four times larger than the original Fitbit Charge HR, so you can see more activity stats and keep your fitness goals on track with just a glance. You can also quickly view notifications from your smartphone on the go, when

your phone is nearby, helping you stay connected to what matters most with call, text and calendar alerts.[3]

17. Much to the dismay of Plaintiff and class members, the Charge 2's display develops a vertical or similar crack as the result of a manufacturing and design defect with ordinary use.

18. Although the devices may continue to otherwise function normally after the crack described above develops, the aesthetic of the watch is ruined and renders the product valueless or near-valueless.

19. Furthermore, as a device with a tap-sensitive display, a crack significantly decreases the functionality of the fitness band as consumers are unable to simply glance at their stats or goals. Thus, undermining Fitbit's representation of the Product being "easy-to-read."

20. The defect in the screen of the Product described herein is a latent defect that would not be discoverable by a reasonable purchaser upon inspection prior to or even after the sale. Thus, Fitbit had a duty to disclose the existence of this latent defect to Plaintiffs and members of the class but failed to do so.

21. Fitbit's failure to disclose the common defect and thereby deprived consumers of the opportunity to negotiate additional warranty coverage, negotiate a lower price to reflect the defect or simply avoid the defect altogether by purchasing a different product.

22. Unfortunately for consumers, Fitbit does not advertise or disclose that it has received scores of complaints of the defect from consumers across the nation.

23. Indeed, the internet, including forums maintained by Fitbit on its own website, is awash with these complaints of the dreaded cracked screen on the Fitbit Charge 2. Some examples, by no means exhaustive, appear below (errors in original):

---

[3] *See Meet Fitbit Charge 2—and Start Making Every Beat Count!*, FitBit News, https://blog.fitbit.com/meet-fitbit-charge-2-and-start-making-every-beat-count/ (last accessed Feb. 22, 2019).

**Gkrein on 02-26-2017**

My daughter and I upgraded to charge 2. Bought them in December. We're in Jamaica for a week February, doing nothing but walking the beach. Mine was fine in the morning when I was done walking my 10000 steps my screen was cracked down the center and along the bottom. My daughter woke up the next morning and hers was also cracked the same way. We didn't do anything but walk the beach.

**scientist4 on 04-24-2017**

I had the exact same thing happen. And I agree with F1Jon - the screen cracked and it appears to be cracking from the inside. There was no impact to the watch, I didn't drop it, it simply cracked right down the middle of the screen as though the screen is expanding or stretching and no longer fits the casing. Moreover Fitbit is not standing by their product. I received it as a gift from my mom but she purchased it from a sports store online, so Fitbit says that voids the warranty. I am so disappointed in this product and their service. Unlike what Heydy says, this is not a long lasting product. It is cheaply made from poor materials and Fitbit isn't standing by it. I was also refused a replacement and was offered 25% off another product from their website because the watch I received was a gift from my mom and she didn't purchase it from the resellers on the Fitbit website. Very disappointed.

**Jayne7 on 05-06-2017**

I also woke yo this morning and my screen on my Fitbit charge 2 had a crack down the middle. This is only four months old and it's very disappointing.

**GVan on 05-16-2017**

My Charge 2 cracked within a month after I got it. In Feb 2017, Fitbit replaced unit without question. I just noticed the replacement unit has a crack. When I called Fitbit they told me it wasn't covered. I asked to speak to a supervisor and they are now considering their options. There are no nicks or gouges. I am using it as designed. I believe they have a flaw in screen

**Sarah7523 on 06-21-2017**

On holiday in Rome last week; very hot. My watch was on a table and when I woke up in the morning had a crack through the screen! Sounds very much like a design fault!

> **Keyxo10 on 08-18-2017**
>
> Yeah ive had my fitbit since Christmas and i noticed about a 2 weeks or so ago that the screen is cracked in 4 places. Im pretty active but i think i wouldve noticed if i hit my arm hard enough to crack the screen. I take very good care of my fitbit, i only take it off to shower and charge it since my husband spent so much money on this for me. I contacted fitbit and they offered me a sorry 20% off another one. I will NEVER buy another fitbit unless they correct this and stand behind their product. Im a part of a very large fitness group worldwide and I'm making sure they know fitbit can't correct what is obviously a fault in their product.
>
> **John98681 on 07-18-2018**
>
> I have been using fit bits for years and they continue to crack and fall apart. I really love the features it provides but you really don't buy the product you have to continue to rebuy it every year or so. It feel like a lease. It is very frustrating. Based on the feedback this not a new issue but it is clearly one that Fitbit is not willing to address. Not sure why other than the fact it forces us to rebuy
>
> **NickyHall on 10-19-2018**
>
> Hello, this has happened to both mine & my friends Fitbit. Neither of us has damaged the watch in any way. The screen just spontaneously cracked.

*See* Fitbit Community, https://community.fitbit.com/t5/Charge-2/Screen-cracked-in-heat/td-p/1809100/page/15 (last accessed Feb. 22, 2019).

24. Fitbit knew or at least should have known that the Product is defective based on the litany of consumer complaints to its own customer service department.

25. Moreover, because Fitbit's warranties are limited in duration, consumers were entitled to know that the defect might not exhibit itself until after their warranties expired, and if that occurred, Fitbit was not committing to repairing the defect. All of these facts were material to consumers' (such as Plaintiff's) purchase decisions.

## FACTS RELATING TO PLAINTIFF

26. On or about July 25, 2017, Plaintiff purchased the Product new from an authorized Illinois retailer for $149.99 plus applicable sales tax.

27. Several months later, a vertical crack running the length of the display of the Product spontaneously developed.

28. Upon discovering the aforesaid damage, Plaintiff complained to Fitbit that the Product's screen had cracked and requested repair or a full refund.

29. Plaintiff was offered but declined a discount offered by Fitbit on a replacement product instead of a full refund or repair, which she had requested.

30. The experience of Plaintiff is not unique, as demonstrated by the anecdotes told by score of other consumers comprising the Class. *See* ¶ 23, *supra*.

## CLASS ACTION ALLEGATIONS

31. This action satisfies the prerequisites for maintenance as a class action provided in Fed. R. Civ. P. 23(a), as set forth below.

32. *Class Definition.* Plaintiff brings this action individually and on behalf of the following class of similarly situated persons (the "Class"), of which Plaintiff is a member:

> All natural persons domiciled in the United States or its territories who purchased a new Fitbit "Charge 2" smart fitness band that subsequently developed a fracture running vertically down the center of the product's display.

Excluded from the Class are Defendant and any of its respective officers, directors or employees, the presiding judge, Class counsel and members of their immediate families, and persons or entities who timely and properly exclude themselves from the Class.

33. *Illinois Sub-Class.* In the alternative, Plaintiff brings this action individually and on behalf of a sub-class of Illinois consumers only who are members of the above-defined class.

34. *Numerosity.* The members of the Class are so numerous and geographically dispersed throughout the United States such that joinder of all members is impracticable. Plaintiff believes that there are thousands of persons in the Class. The exact number and identity of Class

members is unknown to Plaintiff at this time and can only be ascertained from information and records in the possession, custody or control of Defendants.

35. *Commonality.* There are questions of law or fact common to the Class including, *inter alia*, the following:

    a. whether the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.*, applies to the claims of Plaintiff and members of the Class and/or entitles them to relief;

    b. whether Defendant's labeling, marketing, advertising, and promotion of its Product was false and misleading;

    c. whether Defendant's conduct constitutes breach of implied warranty of merchantability;

    d. whether Plaintiff and the Class conferred a benefit on Defendant and whether it would be unjust for it to retain such benefits under the circumstances alleged herein;

    e. whether the Court has subject matter jurisdiction and whether venue in this district is proper;

    f. whether Plaintiff and the members of the Class are entitled to their damages, including treble damages, and the appropriate measure thereof; and

    g. whether equitable or injunctive relief is appropriate.

36. *Typicality.* The claims of Plaintiff are typical of the claims of the Class alleged herein. Plaintiff and other members of the Class are all persons who purchased a Fitbit "Charge 2" and relied on the same omission of material defect.

37. *Adequacy.* Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has retained counsel who are competent and experienced in the prosecution of complex

and class action litigation. The interests of Plaintiff are aligned with, and not antagonistic to, those of the Class.

38. *Fed. R. Civ. P. 23(b)(2) Requirements.* The prerequisites to maintaining a class action for injunctive and equitable relief pursuant to Fed. R. Civ. P. 23(b)(2) exist, as Defendant has acted or has refused to act on grounds generally applicable to the Class thereby making appropriate final injunctive and equitable relief with respect to the Class as a whole.

39. Defendant's actions are generally applicable to the Class as a whole, and Plaintiff seeks, *inter alia*, equitable remedies with respect to the Class as a whole.

40. Defendant's uniform common course of conduct alleged herein makes declaratory relief with respect to the Class as a whole appropriate.

41. *Fed. R. Civ. P. 23(b)(3) Requirements.* This case satisfies the prerequisites of Fed. R. Civ. P. 23(b)(3). The common questions of law and fact enumerated above predominate over questions affecting only individual members of the Class, and a class action is the superior method for fair and efficient adjudication of the controversy.

42. The likelihood that individual members of the Class will prosecute separate actions is remote due to the extensive time and considerable expense necessary to conduct such litigation, especially in view of the relatively modest amount of monetary, injunctive and equitable relief at issue for individual Class members.

43. This action will be prosecuted in a fashion to ensure the Court's able management of this case as a class action on behalf of the Class.

## COUNT I

**(Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq*., and the substantially similar laws of other states)**

44. Plaintiff repeats and realleges the allegations of Paragraphs 1 through 43, *supra*, as though fully stated herein.

45. This Count is brought on behalf of Plaintiff and other Illinois Class members and on behalf of those Class members from other states that have enacted a uniform deceptive trade practices act in the same or substantially similar form as that described herein, which laws are incorporated by reference herein.

46. At all times material hereto, there was in full force and effect an act commonly known as the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq*. ("ICFA").

47. Section 2 of ICFA prohibits "unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use of employment of any practice described in Section 2 of the 'Uniform Deceptive Trade Practices Act' [815 ILCS 510/2], approved August 5, 1965, in the conduct of any trade or commerce . . . whether any person has in fact been misled, deceived or damaged thereby." 815 ILCS 505/2.

48. At all times material hereto, there was in full force and effect in this State an act commonly known as the Uniform Deceptive Trade Practices Act ("UDAP"), 815 ILCS 510/2 *et seq.*, incorporated by reference in Section 2 of ICFA, *supra.*

49. The aforesaid acts and practices of Defendant constitutes unfair or deceptive acts or practices prohibited by Section 2 of ICFA, including but not limited to the use or employment of deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of material fact, with intent that Plaintiff and the Class rely thereon. *See* 815 ILCS 505/2.

50. The aforesaid acts and practices of Defendants further fall within the practices prohibited by Section 2 of the Uniform Deceptive Practices Act incorporated by reference in 815 ILCS 505/2, *supra*.

51. Defendant's unfair and deceptive practices, including the omission of the defect are likely to mislead – and have misled – the consumer acting reasonably in the circumstances, and violate 815 ILCS 505/2. This includes misleading Plaintiff and the Class.

52. Defendant intended that Plaintiff and the Class would rely on the deception by purchasing its Product, unaware of the material defect described above.

53. Plaintiff and members of the Class have been aggrieved by Defendant's unfair and deceptive practices in that they purchased the Product, which they would not have purchased or would not have paid as much for had they known the true facts.

54. The damages suffered by Plaintiff and the Class were directly and proximately caused by the deceptive, misleading, and unfair practices of Defendant, as more fully described herein.

55. As a result of the foregoing, Plaintiff and the Class have been damaged in an amount to be proven at trial.

## COUNT II

### (Breach of Implied Warranty of Merchantability)

56. Plaintiff repeats and realleges the allegations of Paragraphs 1 through 43, *supra*, as though fully stated herein.

57. Defendant, as the manufacturer, distributer, and/or seller impliedly warranted the Product was merchantable, including that the Product could pass without objection in the trade under the contract description, and that the Product was fit for the ordinary purpose for which such Product is used.

58. Defendant breached the implied warranty of merchantability in selling its Product because the goods were not of fair or average quality within the description and the goods were not fit for their intended and ordinary purpose due to the omission of the material defect. As a result, Plaintiff and the Class did not receive the goods as impliedly warranted by Defendant to be merchantable.

59. Plaintiff and the Class purchased the Product in reliance upon Defendant's representations, skill, and judgment and the implied warranties of fitness for that purpose.

60. At the time of sale of the Product, Defendant knew, should have known, or was reckless in not knowing of its misrepresentation that the Product would not perform as warranted.

61. As a result of the foregoing, Plaintiff and the Class have been damaged in an amount to be proven at trial.

### COUNT III

### (Unjust Enrichment)

62. Plaintiff repeats and realleges the allegations of Paragraphs 1 through 43, *supra*, as though fully stated herein.

63. Plaintiff and the Class members have conferred substantial benefits on Defendant by purchasing the Product, and Defendant has knowingly and willingly accepted and enjoyed these benefits.

64. Defendant either knew or should have known that the payments rendered by Plaintiff and the Class members were given and received with the expectation that the Product would be as represented and warranted.

65. Through deliberate misrepresentations or omissions in connection with the advertising, marketing, promotion, and sale of the Product, including omitting that the Product had a defect, Defendant reaped benefits, which resulted in Defendant wrongfully receiving profits.

66. Plaintiff and the members of the class would not have purchased the Product had they been fully informed regarding the above-referenced policies and procedures.

67. Defendants' acceptance and retention of the aforesaid benefits under the circumstances alleged herein would be inequitable absent the repayment of such amounts to Plaintiff and the Class.

68. As a result of the foregoing, Plaintiff and the Class have been damaged in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of members of the Class, prays for judgment in their favor and against Defendant and for the following relief:

A. Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23, certifying the Class defined herein and designating Plaintiff as representative of the Class and her undersigned counsel as Class counsel;

B. Awarding Plaintiff and the Class (1) their actual damages, (2) such treble damages as the Court may allow, and (3) the costs of this action together with reasonable attorneys' fees as determined by the Court;

C. Awarding Plaintiff and the Class all allowable pre- and post-judgment interest on the foregoing awarded damages;

D. Awarding Plaintiff and the Class equitable relief including, *inter alia*, disgorgement of Defendants' ill-gotten gains;

E. Granting appropriate injunctive and declaratory relief; and

F. Awarding such other and further available relief and any other relief the Court deems just and appropriate.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

Date: February 22, 2019

Respectfully submitted,

HILLARY SCHNEIDER

By:   s/ William M. Sweetnam

William M. Sweetnam
Natasha Singh
SWEETNAM LLC
100 North La Salle Street, Suite 2200
Chicago, Illinois 60602
(312) 757-1888
wms@sweetnamllc.com
ns@sweetnamllc.com

*Attorneys for Plaintiff and the Class*